Eloise TURNER *v.* Calvin STEWART

97-227                                          952 S.W.2d 156

Supreme Court of Arkansas
Opinion delivered October 9, 1997

*Richard N. Dodson,* for appellant.

*Dunn, Nutter, Morgan & Shaw,* by: *W. David Carter* and *Christie G. Adams,* for appellee.

DONALD L. CORBIN, Justice. Appellant Eloise Turner appeals the judgment of the Miller County Circuit Court in favor of Appellee Calvin Stewart and his wife Denise Stewart. Jurisdiction of this appeal is properly in this court pursuant to Ark. Sup. Ct. R. 1-2(a)(15). Appellant raises three points on appeal: (1) Appellee was improperly allowed to amend his answer without making a showing of sufficient reasons why he should be allowed to amend; (2) the trial court erred in submitting a jury instruction on comparative fault; and (3) there was no substantial evidence to support the jury's finding. We find no merit and affirm.

The record reveals the following relevant facts. On July 29, 1989, Appellant called Appellee to borrow some card tables. Appellee agreed to loan her the tables and Appellant stated she would come by Appellee's house to get them. When Appellant arrived at Appellee's home, Appellee was outside in the side yard

with his dog, a male Rottweiler named Thunder. Appellant went to the front porch and rang the bell several times. While on the porch, Appellant saw the dog looking at her from around the side of the house. When no one came to the door, Appellant decided to go around to this same side of the house where she heard water running. When she reached the side of the house, Appellant saw Appellee and his dog.

Appellant testified at trial that after talking briefly with Appellee, Appellee called Thunder's name and the dog started in her direction. She stated that she turned her back and ran from the dog toward the front of the house. She stated that Thunder jumped on her and bit her left arm and that she fell to the ground. She stated that she received injuries to her right shoulder and a wound to her left arm. Appellee, on the other hand, stated that he did not see the dog jump on Appellant. He testified that he saw Thunder running in Appellant's direction, as she was going around the corner. He stated that he then called Thunder and the dog returned to the side of the house. After putting the dog away, Appellee indicated that he took Appellant inside the house to look at her injuries. Appellee asked Appellant if she had seen the dog and inquired as to why she did not stay inside her car and honk for him to come out of the house. Appellee then took Appellant to the hospital, where Appellant stated to hospital personnel that her injuries were a result of falling while running from a dog.

On August 1, 1989, Appellee brought Thunder to Dr. Cynthia Pfluger, the dog's veterinarian, for shots. At that time, Dr. Pfluger advised that the dog should be castrated or undergo obedience training due to what Dr. Pfluger's observation of the dog's aggressive tendencies. Dr. Pfluger also testified that on July 1, 1989, less than one month before the incident in question, Denise Stewart had called and advised that Thunder had bitten her mother, Verneener Stewart. Dr. Pfluger stated that she then recommended to quarantine the dog. At trial, however, Mrs. Stewart denied that Thunder had bit her mother; instead, she stated that the dog had merely scratched her mother's face while he was chasing a cat. Verneener Stewart testified that she did not remember the incident. At the close of Appellant's case, the trial court

entered a directed verdict in favor of Denise Stewart. After deliberation, the jury returned a verdict in favor of Appellee.

### Amended Answer

Appellant asserts that the trial court erred when allowing Appellee to amend his answer to an amended complaint. Appellant relies on ARCP Rules 6(b) and 12(a) in arguing that Appellee failed to set forth sufficient reasons showing the necessity for an extension of time to file his answer. Appellee asserts that ARCP Rule 15 provides that amendment of pleadings should be allowed unless prejudice or undue delay is shown by the party opposing the amendment.

The record reflects that after an amended complaint alleging strict liability was filed by Appellant on January 26, 1990, Appellee did not respond within twenty days as required by Rule 15. Appellant argues that but for the amended answer filed on March 22, 1990, Appellee would have been in default and Appellant would have been entitled to a partial summary judgment. On March 30, 1990, the trial court entered an order granting Appellee's motion to file the amended answer, stating that Appellant would not be prejudiced by the amended answer. The question before us is whether the trial court abused its discretion in allowing the amended answer to be filed.

Although amendment of pleadings is encouraged, the trial court is vested with broad discretion in allowing or denying amendments. *Kay v. Economy Fire & Cas. Co.*, 284 Ark. 11, 678 S.W.2d 365 (1984). Arkansas Rule of Civil Procedure 15(a) provides in part:

> [A] party may amend his pleadings at any time without leave of the court. Where, however, upon motion of an opposing party, the court determines that prejudice would result or the disposition of the cause would be unduly delayed because of the filing of an amendment, the court may strike such amended pleading or grant a continuance of the proceeding. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 20 days after service of the amended pleading, whichever period is longer, unless the court otherwise orders.

Under Rule 15, a party may amend his pleadings at any time without leave of the court. If, however, the opposing party files a motion objecting to the amendment, the trial court must determine whether prejudice would result to that party or if the case would be unduly delayed by the amendment. *Webb v. Workers' Compensation Comm'n*, 286 Ark. 399, 692 S.W.2d 233 (1985). An important consideration in determining prejudice is whether the party opposing the motion will have a fair opportunity to defend after the amendment. *Pineview Farms, Inc. v. Smith Harvestore, Inc.*, 298 Ark. 78, 765 S.W.2d 924 (1989). A party should be allowed to amend his pleading absent proof of prejudice, and the failure of the opposing party to seek a continuance is a factor to be considered in determining whether prejudice was shown. *Webb*, 286 Ark. 399, 692 S.W.2d 233. Where neither a continuance was requested nor a demonstration of any prejudice resulting from an amendment was shown, the amendment should be allowed. *Id.*

█ In this case, Appellant did not request a continuance or demonstrate that she would be prejudiced or that undue delay would result if the court should allow the amendment. By applying Rule 15, the trial court did not abuse its discretion in finding that the amended answer did not prejudice Appellant. Accordingly, it was not error for the trial court to allow the amendment.

### Comparative Fault

█ Appellant argues that the trial court erred in submitting to the jury an instruction on comparative fault. Appellant argues that the comparative-negligence instruction should not have been given because there was no showing that Appellant proximately caused the dog's attack. Appellee replies that the question to be asked is whether Appellant's actions could have proximately caused her injuries. Comparative fault is an affirmative defense. Arkansas Code Annotated § 16-64-122 (Supp. 1995) provides in pertinent part:

> (a) In all actions for damages for personal injuries . . . in which recovery is predicated upon fault, liability shall be determined by comparing the fault chargeable to a claiming party with the fault chargeable to the party . . . from whom the claiming party seeks to recover damages.

. . . .

       (c)  The word "fault" as used in this section includes any act, omission, . . . which is a proximate cause of any damages sustained by any party.

Under the express language of the statute, there must be a determination of "proximate cause" before any "fault" can be assessed against the claiming party. *Skinner v. R.J. Griffin & Co.*, 313 Ark. 430, 855 S.W.2d 913 (1993); *Baker v. Morrison*, 309 Ark. 457, 829 S.W.2d 421 (1992). Proximate cause is a cause which, in a natural and continued sequence, produces damage, and without which the damage would not have occurred. *Id.* While the question of proximate cause is usually a question for the jury, when the evidence is such that reasonable minds cannot differ, the issue becomes a question of law to be determined by the trial court. *Id.* In *Ambort v. Nowlin*, 289 Ark. 124, 709 S.W.2d 407 (1986), the trial court's instruction to the jury that it must determine whether appellant was at fault in the incident wherein appellees' dog bit him, was supported by the evidence. This court held that the judge was correct in submitting the case to the jury on the basis of comparative fault, rather than on the theory of strict liability. There was a fact question as to whether appellant was a trespasser or a licensee when he was bitten by appellees' dog, since he was on private property and had not been expressly invited there. There was also a fact question as to whether appellant was guilty of negligence in approaching the fenced yard on private property with two dogs, which were barking and causing him apprehension. This court concluded that although an owner can be held strictly liable in such instances, if there is an issue of the plaintiff's negligence or other fault, the plaintiff's recovery may be diminished by the doctrine of comparative fault.

    █  Just as in *Ambort*, the jury in this case could have concluded that Appellant did not use good judgment, was negligent, and was partly at fault for her injuries. Appellant entered the yard despite the presence of "Beware of the Dog" signs in the front yard, approached the front door, and walked around to the side of the house where she had seen an unfamiliar dog. There was also evidence that could have supported the jury's finding that Appellant's injuries were proximately caused by her running from the

dog, rather than from the dog's attack. From the evidence presented, the jury could have disbelieved that Appellant was attacked and determined that her injuries were a result of her fall. Accordingly, it was not error for the trial court to instruct the jury on comparative fault.

### Substantial Evidence

Appellant argues that the jury's verdict in favor of Appellee was not supported by substantial evidence. When reviewing the sufficiency of the evidence, the appellate court reviews the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered. *Balentine v. Sparkman*, 327 Ark. 180, 937 S.W.2d 647 (1997). The verdict will be affirmed if there is substantial evidence to support it. *Id.* Substantial evidence is evidence that passes beyond mere suspicion or conjecture and is of sufficient force and character that it will, with reasonable and material certainty, compel a conclusion one way or the other. *Id.*

Appellant asserts that Appellee knew that the dog was a vicious animal due to its previous history and the circumstances surrounding the incident in question. She asserts that she was a licensee on Appellee's property, and that Appellee thus owed a duty to her to exercise ordinary care to avoid injury to her. Appellant additionally points out that there was also a Texarkana city ordinance that she argues Appellee violated by allowing the dog outside the fenced area and that this violation should have also supported a verdict for Appellant.

A "licensee" is one who goes upon the premises of another with the consent of the owner for one's own purposes and not for the mutual benefit of oneself and the owner. *Bader v. Lawson,* 320 Ark. 561, 898 S.W.2d 40 (1995). Appellant was a licensee allowed onto the premises of Appellee to retrieve the card tables. The question of the duty, if any, owed by one person to another is always a question of law and never one for the jury. *Id.* A landowner owes a licensee the duty to refrain from injuring him or her through willful or wanton conduct. *Id.* To constitute willful or wanton conduct, there must be a course of action which

shows a deliberate intention to harm or utter indifference to, or conscious disregard of, the safety of others. *Id.* If, however, a landowner discovers a licensee is in peril, he or she has a duty of ordinary care to avoid injury to the licensee. *Id.* The duty takes the form of warning a licensee of hidden dangers if the licensee does not know or have reason to know of the conditions or risks involved. *Id.*

Here, the jury was instructed on the duty owed to a licensee and on the Texarkana ordinance. The pertinent question was whether Appellee knew his dog was vicious prior to the date of this incident. There was substantial evidence that Appellee had no knowledge that the dog was vicious. In fact, Appellee's wife testified that she had no knowledge of the dog attacking anyone. She stated that the dog had previously scratched her mother when the dog was going towards a cat. Appellee's mother-in-law Verneener Stewart testified that she had never been bitten by the dog. The veterinarian, while recommending obedience training or castration, only established that the dog was aggressive around the office for shots or checkups. Appellee testified that to his knowledge, the dog had never bitten or attacked anyone prior to this incident. We thus conclude that there was substantial evidence to support the jury's verdict.

Affirmed.